UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LESLIE KAPLAN,**<br><br>       **Plaintiff,**<br><br>    v.<br><br>**GREENPOINT GLOBAL,** *et al.***,**<br><br>       **Defendants.** | Civ. No. 2:11-cv-04854 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Leslie Kaplan brings this action against Defendants GreenPoint Global and Sanjay Sharma for breach of an employment agreement. This matter comes before the Court on Plaintiff's motion to amend the complaint, and Defendants' motion to dismiss. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion to amend is **GRANTED**, and that Defendants' motion to dismiss is **GRANTED** in part, and **DENIED** in part.

**I.    BACKGROUND**

      The following facts are drawn from the Amended Complaint. Plaintiff Leslie Kaplan is a resident of New Jersey who works in the legal services profession. Am. Compl. ¶¶ 8, 11. Defendant GreenPoint, a corporation providing legal outsourcing services to corporations and law firms, maintains its principle place of business in New York. *Id.* ¶ 7. Defendant Sharma is the founder of GreenPoint and is a resident of New York. *Id.* ¶ 9.

      At some point prior to December 2010, Plaintiff met with the General Manager and Chief Executive Office of GreenPoint, Jackie Karceski, to discuss a potential job opportunity as GreenPoint's Director of Legal Services. Am. Compl. ¶ 12. Thereafter, Plaintiff and Karceski entered into a series of negotiations regarding Plaintiff's compensation package. *Id.* These negotiations took place in Plaintiff's and Karceski's New Jersey homes, and in New Jersey restaurants. *Id.* ¶ 17. According to the Amended Complaint, Karceski represented to Plaintiff that, if she accepted a position as GreenPoint's Director of Legal Services, she would earn between $175,000 and $200,000

1

in 2011. *Id.* ¶ 14. Karceski also offered Plaintiff a 10% ownership interest in the company, profit sharing, and health benefits. *Id.* ¶¶ 14-15. At some point during these negotiations, Plaintiff also spoke with Defendant Sharma, who allegedly represented that GreenPoint was ranked as one of the top ten legal outsourcing companies, that GreenPoint worked with forty (40) contract attorneys, and that GreenPoint had at least $600,000 in annual billings. *Id.* ¶¶ 42-45.

On December 1, 2010, Plaintiff began working as GreenPoint's Director of Legal Services, although no written employment agreement had been signed. Am. Compl. ¶ 10. Plaintiff performed all of her duties from her home office in New Jersey. *Id.* ¶¶ 19, 51. GreenPoint highly praised Plaintiff for the services she provided. *Id.* ¶ 37. After she began working at the company, Plaintiff discovered that GreenPoint was not as successful as Sharma had represented: GreenPoint was not ranked as one of the top ten legal outsourcing companies, GreenPoint worked with only 12 contract attorneys, and GreenPoint had no more than $40,000 in annual billings. *Id.* ¶¶ 42-45.

On December 18, 2010, Plaintiff was presented with a written employment contract reflecting a base salary of $80,000. The written contract did not provide for profit sharing or health benefits, and contained a commission plan that would not provide Plaintiff with the opportunity to earn $175,000 to $200,000 in 2011. Am. Compl. ¶¶ 20-21. Plaintiff sent a mark-up of the contract back to Karceski, who assured Plaintiff that the contract would be revised to reflect the originally negotiated terms. Am. Compl. ¶ 22. Plaintiff continued to work for GreenPoint and, on March 23, 2011, Karceski presented Plaintiff with another contract reflecting a total earning in 2011 of $203,852, and a 10% ownership interest in the company. Am. Compl. ¶ 25. The revised contract was presented to Defendant Sharma, who did not approve it. Am. Compl. ¶ 26. On May 25, 2011, Plaintiff was terminated. Am. Compl. ¶¶ 28, 40, 51.

## II.  DISCUSSION

### A.  MOTION TO AMEND

Once a responsive pleading has been filed, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court is to freely grant leave "when justice so requires." *Id.* The decision to grant a motion to amend a pleading rests in the sound discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970). Generally, leave to amend should be granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) repeated failure to cure deficiencies through previous amendments; or (5) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff filed a four-count Complaint on August 22, 2011 that included a claim for breach of an oral contract (among other things). On November 21, 2011, Defendants filed the instant motion to dismiss. On January 6, 2011, Plaintiff moved to file a revised,

five-count Amended Complaint that included an additional claim for breach of a written contract. Defendants' only argument in opposition to the motion to amend is that the amendment would be futile for the reasons set forth in the previously-filed motion to dismiss. Briefing was completed on both motions on January 31, 2012. Because Defendants rely on the motion to dismiss to show futility, the Court will **GRANT** the motion to amend, and apply the motion to dismiss to the Amended Complaint.

### B. MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

In this case, Plaintiff's Amended Complaint asserts five causes of action: (1) breach of oral contract; (2) breach of written contract; (3) *quantum meruit*; (4) fraudulent inducement; and (5) violation of New Jersey's Wage Payment Law. Defendants have moved to dismiss all but the second claim.[1] The parties also dispute whether the law of New Jersey or New York applies. For the reasons set forth below, the Court finds that New Jersey law applies to all of Plaintiff's claims. Applying New Jersey law, the Court finds that Count I should be dismissed without prejudice, Count IV should be dismissed with prejudice, and the motion to dismiss the remaining claims should be denied. Each issue will be addressed in turn.

### 1. Choice of Law

Because Plaintiff's claims are based on state law, at the outset the Court must determine which state's law to apply. A federal court sitting in diversity applies the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). As such, the Court will apply the choice of law rules of New Jersey. New Jersey has adopted the "most significant relationship" test of the Restatement of Conflict

---

[1] As noted above, in the Amended Complaint, Plaintiff added a claim for breach of a written contract (Count II). Defendants had the opportunity to address this new claim in their opposition to Plaintiff's motion to amend and in their motion to dismiss reply brief, but did not do so. Thus, Count II of the Amended Complaint survives Defendants' motion.

3

of Laws. *P.V. v. Camp Jaycee,* 197 N.J. 132, 142-43 (2008). This test requires a two-step analysis. *Id.* at 143. The first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies. *Id.* Second, if a conflict does exist, the Court must determine which state has the "most significant relationship" to the claim, by "weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action." *Snyder v. Farnam Companies, Inc.*, 792 F.Supp. 2d 712, 717 (D.N.J. 2011). Choice of law analysis may be appropriate at the motion to dismiss stage, depending on whether the issues require a full factual record. *Id.* at 718. Choice of law analysis is performed on an issue-by-issue basis. *Id.* at 717. Thus, the Court will address choice of law separately for each issue.

### 2. Breach of an Oral Contract (Count I)

In Count I of the Amended Complaint, Plaintiff asserts a claim for breach of an oral contract. Defendants move to dismiss this claim, arguing that (1) the claim is barred by the statute of frauds; and that (2) Plaintiff cannot maintain a claim for breach of an at-will employment arrangement. For the reasons set forth below, Count I is dismissed without prejudice.

#### i. Statute of Frauds

As a threshold issue, the Court must first determine whether to apply New Jersey or New York law. Under the first step of New Jersey's "most significant relationship" test, an actual conflict exists between New Jersey and New York's laws governing the statute of frauds. Under New York law, an agreement that cannot be performed within one year must be in a signed writing. N.Y. General Obligation Law § 5-701(a)(1) (McKinney 2002); *Durante Bros. Const. Corp. v. College Point Sports Ass'n, Inc.*, 207 A.D.2d 379, 379 (N.Y. App Div. 1994). New Jersey's statute of frauds, in contrast, no longer renders an oral agreement unenforceable if it cannot be performed within one year. N.J.S.A. 25:1-5e, repealed by L. 1995, c. 360, § 8 effective Jan. 5, 1996; *see also Graziano v. Grant*, 741 A.2d 156, 162-63 (N.J. App. Div. 1999). Therefore, there is an actual conflict with regard to the two states' laws. *See generally Snyder*, F.Supp. 2d at 720.

Because an actual conflict exists between New York and New Jersey's laws, the Court must move to the second step of the analysis, which is to determine which state has the "most significant relationship" to the issues. Because the claim sounds in contract, the Court looks to Section 188 of the Restatement to determine which state's law applies. The Restatement requires courts to consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188 (2012); *Agostino v. Quest Diagnostics, Inc.,* 256 F.R.D. 437, 464 (D.N.J.2009). Additionally, courts look to the more general factors set forth in Section 6 of the

Restatement: (1) interests of interstate comity, (2) interests of the parties, (3) interests underlying the field of law, (4) interests of judicial administration, and (5) competing interests of the states.  Restatement (Second) of Conflict of Laws § 6; *P.V. v. Camp Jaycee,* 962 A.2d 453, 463 (N.J. 2008).

In this case, New Jersey has the "most significant relationship" to the issues.  With respect to the first and second factors, the Amended Complaint alleges that Plaintiff and Karceski negotiated the terms of the alleged agreement in their New Jersey homes and in New Jersey restaurants.  Am. Compl. ¶ 17.  Thus, the place of contracting and the place of negotiation was New Jersey.[2]  With respect to the third and fourth factors, Plaintiff performed all of her duties from her home office in New Jersey, making New Jersey the place of performance and the location of the subject matter of the contract.  Am. Compl. ¶ 19.  As to the fifth contract factor, Plaintiff is a New Jersey resident, Am. Compl. ¶ 8, while Defendants GreenPoint and Sharma are both located in New York. Am. Compl. ¶ 7, 9.  As such, this factor does not weigh heavily in favor of either state.  Finally, applying New Jersey law to this issue best protects the parties' expectations, the state's policies, and interstate relationships because the alleged contract was entirely negotiated, agreed to, and performed in New Jersey.  Therefore, New Jersey law applies.

Because New Jersey law does not bar oral employment agreements that cannot be performed within one year, Defendants' motion to dismiss based on the statute of frauds is denied.

### ii.   At Will Employment

Under the first step of New Jersey's "most significant relationship" test, an actual conflict exists between New Jersey and New York's laws governing at-will employment arrangements.  Under New York and New Jersey law, where the term of employment is for an indefinite time period, the employment is presumed to be at-will and may be freely terminated by either party at any time for any reason or even for no reason.  *See Lobosco v. New York Tel. Co/NYNEX*, 751 N.E.2d 462, 464 (N.Y. 2001); *Anderson v. DSM N.V.*, 589 F.Supp.2d 528 (D.N.J. 2008).  However, New Jersey recognizes more exceptions to the traditional rule than New York. *Compare Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 509 (N.J. 1980) (recognizing cause of action for wrongful termination in violation of public policy), *with Horn v. New York Times*, 100 N.Y.2d 85, 96 (N.Y. 2003) ("We have consistently declined to . . . imply terms grounded in a conception of public policy into employment contracts.").  Thus, an actual conflict exists.  *See generally Ramsbottom v. First Pennsylvania Bank, N.A.*, 718 F. Supp. 405, 408 (D.N.J. 1989).  With respect to the second step, for the reasons explained above, New Jersey has the "most significant relationship" to the issues.  Therefore, New Jersey law applies.

---

[2] Because all negotiations took place in New Jersey, the Court infers that the alleged oral agreement was reached in New Jersey.

Under New Jersey law, where the term of employment is for an indefinite period of time, the employment is presumed to be "at will" unless an employment contract states otherwise. *Varrallo v. Hammond, Inc.,* 94 F.3d 842, 845 (3d Cir.1996). The at-will presumption may be overcome only if the employee's status as a non-at-will employee is "specifically stated in explicit, contractual terms." *Bernard v. IMI Sys., Inc.,*131 N.J. 91, 106 (N.J. 1993). A salary stated in annual terms does not indicate definite, year-to-year employment. *Id.* Under an at-will scheme, an employer may terminate employment for a good reason, a bad reason, or no reason at all. *Anderson*, 589 F.Supp. 2d at 534.

In this case, Plaintiff is an at-will employee because the alleged term of employment was for an indefinite period of time. Plaintiff only alleges that she was hired on December 1, 2010, but does not reference an ending date. Am. Compl. ¶ 10. Further, although the parties' negotiations focused on compensation for 2011, the Amended Complaint does not allege that 2011 would be Plaintiff's sole year of employment. *Id.* ¶ 14. Instead, the Court can reasonably infer that the discussions of profit sharing and a 10% ownership interest reflect the parties' understanding that Plaintiff would remain at GreenPoint indefinitely. *Id.* ¶ 15. Plaintiff's conclusory assertion that she falls under one of the New Jersey exceptions is not supported by any of the allegations in the Amended Complaint. *See Woolley v. Hoffmann-LaRoche, Inc.* 491 A.2d 1257 (N.J. 1985) (exception limited to implied promise in an employment manual); *Savarese v. Pyrene Mfg. Co.*, 89 A.2d at 240 (exception limited to promises of lifetime employment). Because Plaintiff is an at-will employee, her discharge does not constitute a breach of contract entitling her to her full 2011 salary. *Pitak v. Bell Atl. Network Serv., Inc.*, 928 F.Supp. 1354, 1370 (D.N.J. 1996).

Accordingly, the motion to dismiss Count I is **GRANTED**, and Count I is **DISMISSED WITHOUT PREJUDICE**.

### 3. Quantum Meruit (Count III)

In Count III of the Amended Complaint, Plaintiff asserts a claim for *quantum meruit*. Plaintiff essentially argues that Defendants underpaid her for the work she actually performed from December 1, 2010 to May 25, 2011. Defendants move to dismiss this claim, arguing that Plaintiff failed to state a claim.[3] For the reasons set forth below, the motion to dismiss Count III is denied.

No conflict exists between New Jersey and New York's standard for *quantum meruit* claims. In New Jersey, a plaintiff must establish the following elements in order to recover under a *quantum meruit* theory: (1) performance of services in good faith; (2) acceptance of the services by the person to whom they are rendered; (3) an expectation of

---

[3] Defendants also argue that Plaintiff intended to assert a claim for promissory estoppel, not *quantum meruit*. The Court declines to read the *quantum meruit* claim as a claim for promissory estoppel.

6

compensation therefore; and (4) the reasonable value of the services. *Starkey, Kelley, Blaney & White v. Estate of Nicolaysen*, 792 A.2d 238, 242-43 (N.J. 2002). The same factors are evaluated under New York law. *See Skillgames, LLC v. Brody*, 767 N.Y.S.2d 418, 422 (N.Y. App. Div. 2003). "Where no conflict exists, the law of the forum state applies." *Snyder*, 792 F. Supp. 2d at 717. Thus, the Court will apply New Jersey law to the Plaintiff's *quantum meruit* claim.

Plaintiff adequately states a prima facie *quantum meruit* claim because the Amended Complaint, read in the light most favorable to Plaintiff, adequately addresses all four factors. First, Plaintiff alleges that, throughout her employment with Defendant, she performed her job duties in good faith. Am. Compl. ¶ 36. Second, Plaintiff alleges that Defendants not only accepted her services, but praised her work. *Id.* ¶ 37. Third, Plaintiff alleges that, based on her discussions with Karceski, she reasonably expected to be compensated for the work that she actually performed. *Id.* ¶ 38. Fourth, Plaintiff alleges that the negotiated rate of compensation was the reasonable value of Plaintiff's services. *Id.* ¶¶ 39-40.

Accordingly, the motion to dismiss Count III is **DENIED**.

### 4. Fraudulent Inducement (Count IV)

In Count IV of the Amended Complaint, Plaintiff asserts a claim for fraudulent inducement. Defendants move to dismiss this claim, arguing that Plaintiff failed to plead fraud with particularity. For the reasons set forth below, Count IV is dismissed with prejudice.

No conflict exists between New Jersey and New York's laws governing common law fraud. *Gutman v. Horward Sav. Bank*, 748 F.Supp. 254, 257 (D.N.J. 1990) (the common law fraud factors under both states' laws are the same). Thus, New Jersey law applies. In New Jersey, the elements for fraud are proof that the defendant made (1) a material misrepresentation of present or past fact; (2) with knowledge of its falsity; (3) with the intention that the other party rely thereon; (4) and which resulted in reasonable reliance by plaintiff to his or her detriment. *Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 144-45 (3d Cir. 2001). Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America,* 361 F.3d 217, 223-224 (3d Cir.2004)) (internal quotation marks omitted). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *Id.*

The Amended Complaint addresses the fraud factors, but does not do so with the particularity that Rule 9(b) requires. Plaintiff alleges that Defendants knowingly made

7

certain misrepresentations about the company's success, but Plaintiff does not identify the date, time, or location of any of these alleged misrepresentations, or otherwise substantiate the allegations. *See* Am. Compl. ¶¶ 42-47. For example, Plaintiff alleges that Sharma made the majority of the misrepresentations, but Plaintiff does not provide any context for these statements; does not specify if these statements were made before, during, or after Plaintiff's negotiations with Karceski; does not specify if they were made in New York or New Jersey; does not specify if they were made in person or over the phone; etc. *See id.* Such allegations do not meet the requirements of Rule 9(b). Further, when Plaintiff filed her Amended Complaint, Plaintiff was fully aware of Defendants' motion to dismiss Count IV for lack of particularity. Thus, Plaintiff had the opportunity to inject precision into these allegations, and chose not to do so.

Accordingly, the motion to dismiss Count IV is **GRANTED**, and Count IV is **DISMISSED WITH PREJUDICE**.

### 5. New Jersey Wage Payment Law (Count V)

In Count V of the Amended Complaint, Plaintiff asserts a claim under the New Jersey Wage Payment Law ("WPL"), alleging that Defendants failed to pay her all the compensation she was due. Defendants argue that Plaintiff is precluded from invoking the WPL because she worked in New York for a New York company. Defendants are incorrect. New Jersey courts hold that the WPL applies to out-of-state corporations if the employees work out of and reside in New Jersey. *Mulford v. Computer Leasing, Inc.*, 759 A.2d 887, 891 (N.J. App. Div. 1999). According to the Amended Complaint, Plaintiff resided in New Jersey, and worked exclusively out of her New Jersey home office. Am. Compl. ¶ 8, 19, 51. Accordingly, Defendants' motion to dismiss Plaintiff's WPL claim is **DENIED**.

## III.   CONCLUSION

For the reasons stated above, Plaintiff's motion to amend is **GRANTED**, and Defendants' motion to dismiss is **GRANTED** in part, and **DENIED** in part. Count I is dismissed without prejudice, Count IV is dismissed with prejudice, and the motion to dismiss the remaining claims is denied. An appropriate order follows.

      /s/ William J. Martini
    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 20, 2012**